# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**COREY JAVIER KLESER,**

        **Plaintiff,**

        v.                                                   **Case No. 15-CV-602**

**DR. CRAIG ROSENTHAL and
DR. KENNETH LUEDTKE,**

        **Defendants.**

## ORDER

      Corey Javier Kleser, a Wisconsin state prisoner who is representing himself, filed a complaint pursuant to 42 U.S.C. §1983, alleging that his civil rights were violated. Judge J.P. Stadtmueller (the judge assigned to the case at the time) screened Kleser's complaint pursuant to 28 U.S.C §1915A(a) and allowed him to proceed with his claim that defendants Dr. Craig Rosenthal and Dr. Kenneth Luedtke were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment to the U.S. Constitution when they failed to provide adequate treatment for his injured tooth. The parties subsequently consented to the full jurisdiction of this court, so, pursuant to General Local Rule 73.1, the case was reassigned.

On April 11, 2016, the defendants filed a motion for summary judgment. That motion is now fully briefed and ready for the court's decision.

## RELEVANT FACTS

The facts in this section are primarily taken from "Defendants' Proposed Findings of Fact." (ECF No. 25.) Kleser did not respond to the defendants' proposed facts in the form required by this district's local rules; thus, the defendants' proposed facts are admitted for the purpose of deciding summary judgment. *See* Civil Local Rule 56(b)(4). That said, additional facts are taken from Kleser's sworn amended complaint (ECF No. 7) because the Court of Appeals for the Seventh Circuit has instructed district courts to construe a sworn complaint as an affidavit at the summary judgment stage. *Ford v. Wilson*, 90 F.3d 245, 246-47 (7th Cir. 1996). The facts are undisputed unless noted otherwise.

At all relevant times, Kleser was housed at Dodge Correctional Institution, where Rosenthal and Luedtke were employed as dentists. (ECF No. 25 at ¶3-4.) On February 14, 2015, Kleser submitted a Dental Services Request form complaining about pain in a tooth that had been filled several months earlier. (*Id.* at ¶7.) Rosenthal reviewed Kleser's request on Monday, February 16, 2015, the next day that dental staff was on duty, and determined that Kleser should be examined that same day. (*Id.* at ¶8.)

At the examination, Rosenthal examined Kleser's tooth #13, which was a bicuspid located in the upper-left rear of Kleser's mouth. (*Id.* at ¶9.) Rosenthal took an x-

ray and performed an examination, including percussion and cold tests on the tooth. (*Id.*) The tests revealed "a lack of vitality" in the tooth. (*Id.*) Based on these tests, a review of Kleser's dental chart, and Kleser's reported history, Rosenthal diagnosed a "necrotic tooth" and prescribed medication for Kleser to take every eight hours as needed for the pain. (*Id.*)

A necrotic tooth means that the nerve in the tooth is dead. (*Id.* at ¶10.) If left untreated, a necrotic tooth can get infected and develop an abscess, which can be painful. (*Id.*; ECF No. 7 at 4.) The standard dental remedy for a necrotic tooth is either to extract the tooth or to perform a root canal, which is a dental procedure that removes dead nerve tissues from the tooth. (ECF No. 25 at ¶10.) Typically, a root canal is performed by a dentist with training in endodontics or by an endodontist, who is a specialist. (*Id.*) If no infection has developed, a patient may choose to take no action. (*Id.*)

Rosenthal was uncertain whether the tooth had a single root or multiple roots. (*Id.* at ¶11.) This is important because a root canal on a tooth with multiple roots is more complicated and the risk of an unsuccessful procedure are greater than a root canal on a tooth with a single root. (*Id.*)

On February 18, 2015, Rosenthal discussed the tooth with Luedtke and scheduled an appointment with him for February 19, 2016, to start the root canal in an attempt to save the tooth. (*Id.* at ¶12.) At the appointment, Luedtke informed Kleser that he had reevaluated the x-ray taken by Rosenthal and determined that the tooth had multiple

roots. (*Id.* at ¶13.) Luedtke states that, based on his clinical judgment and experience, he did not think it was likely that a root canal procedure could be completed successfully. (*Id.*) Although Luedtke understood Kleser's preference to preserve the tooth, Luedtke informed Kleser that he would not do a root canal on the tooth. (*Id.* at ¶13-14.) In light of the resources available through the Department of Corrections (DOC) and the complicated nature of the multiple roots, Luedtke told Kleser that his options were to extract the tooth or to do nothing about the tooth. (*Id.*) Kleser chose to do nothing and declined to have the tooth extracted at that time. (*Id.* at ¶14.)

In late February 2015, Kleser filed an inmate complaint stating that root canals were not performed at Dodge and that Dodge did not have the equipment to perform root canals. (*Id.* at ¶15; ECF No. 7 at 5.) The defendants state that Kleser's complaints are not accurate. (ECF No. 25 at ¶15.) They explain that root canals are performed at Dodge depending on the circumstances of the subject tooth. (*Id.*) Further, under DOC policy DAI 500.40.06, procedure IV, while root canal treatment is generally not available for posterior teeth, the treating dentist may elect to provide a posterior root canal based on his clinical judgment. (*Id.* at ¶16; ECF No. 7 at 3.)

On July 8, 2015, Kleser was seen by a dental hygienist. (ECF No. 25 at ¶18.) The records reflect no reports of problems, and he was told to return in twelve months for an annual checkup. (*Id.*) Kleser did not report a problem with the tooth until September 2015, when the tooth became infected, developed an abscess, and became painful. (*Id.* at

¶19.) On September 27, 2015, Kleser submitted a Dental Service Request form, and Luedtke saw him the next day for a triage appointment. (*Id.* at ¶20.) Based on Kleser's urging, Luedtke scheduled an appointment for the next week to consider performing a root canal to save the tooth. (*Id.*) In his notes, Luedtke stated that he thought there was a poor prognosis for a successful root canal procedure. (*Id.*) In the meantime, Luedtke prescribed pain medication to address Kleser's pain and antibiotics for the infection. (*Id.*)

On October 6, 2015, Kleser submitted a Dental Service Request form because his medication had run out. (*Id.* at ¶21.) Luedtke tried to see Kleser that day, but he was in segregation and unable to go to the appointment. (*Id.*) Luedtke saw Kleser on October 13, 2015. (*Id.* at ¶22.) By then, the abscess had become more painful, and Kleser requested to have the tooth extracted. (*Id.*) Luedtke extracted the tooth that same day. (*Id.*)

## I.     SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Ames v. Home Depot U.S.A., Inc.*, 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over a "material fact" is

"genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

## II. ANALYSIS

"Prison officials violate the Eighth Amendment's proscription against cruel and unusual punishment when their conduct demonstrates 'deliberate indifference to serious medical needs of prisoners.'" *Gutierrez v. Peters*, 111 F.3d 1364, 1369 (7th Cir. 1997). This principle applies to dental care. *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010). The standard by which a claim is evaluated contains both an objective element (i.e., that the medical need be sufficiently serious) and a subjective element (i.e., that the officials act with a sufficiently culpable state of mind). *Gutierrez*, 111 F.3d at 1369.

The defendants do not dispute that a necrotic tooth is an objectively serious condition. As explained by the defendants, a necrotic tooth that is not treated can become infected and develop an abscess, which can be quite painful. Because the objective prong of the deliberate indifference standard is not at issue, the court will focus its analysis on whether Kleser has created a dispute of material fact regarding whether the defendants disregarded an excessive risk to his health. *See Gutierrez*, 111 F.3d at 1369 (citing *Farmer v. Brenan*, 511 U.S. 825, 837 (1994)).

Demonstrating that prison officials have acted with a sufficiently culpable state of mind is difficult: both medical malpractice and a mere disagreement with a medical professional's medical judgment are insufficient to satisfy the standard. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011). "A plaintiff can show that the professional disregarded the need only if the professional's subjective response was so inadequate that it demonstrated an absence of professional judgment, that is, 'no minimally competent professional would have so responded under those circumstances.'" *Arnett*, 658 F.3d at 751 (quoting *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011)).

<u>Rosenthal</u>

On February 16, 2015, Rosenthal reviewed Kleser's request form complaining about pain in a tooth that had been filled months earlier. He scheduled Kleser for an appointment that same day. During the examination, he took an x-ray, reviewed Kleser's

medical records, and performed percussion and cold tests on the affected tooth. Rosenthal diagnosed Kleser as having a necrotic tooth and prescribed him some pain medication. Two days later, Rosenthal discussed the tooth with Luedtke and scheduled Kleser for an appointment on February 19, 2016, so that Luedtke could start a root canal in an attempt to save the tooth. Rosenthal does not explain why he referred Kleser to Luedtke for the root canal rather than doing it himself. It may be that he does not have the relevant endodontics experience or it may be that he did not have the time. Why he made the referral, however, does not matter. All that matters is that Rosenthal acted promptly and exercised his professional judgment at every point of interaction with Kleser. He examined Kleser, diagnosed Kleser's ailment, and referred Kleser to someone who could treat him, all within a three-day period.

Rosenthal is entitled to summary judgment because, based on the undisputed facts, no reasonable jury could conclude that he was deliberately indifferent to Kleser's dental needs.

## Luedtke

Kleser argues that Luedtke was deliberately indifferent to his dental needs because he offered only an extraction of the affected tooth and refused to attempt a root canal. According to Luedtke, the standard dental remedy for a necrotic tooth is either to extract the tooth or to perform a root canal in an effort to preserve the tooth. Luedtke states that he understood that Kleser preferred to preserve his tooth, so he evaluated

whether a root canal was possible. Initially, it was unclear to him whether the tooth had a single root or multiple roots. Luedtke explains that a root canal on a tooth with multiple roots is much more difficult and carries a higher risk of failure. Thus, when he determined that Kleser's tooth had multiple roots, he decided that extraction was the preferred treatment.

The Court of Appeals for the Seventh Circuit has held that a dispute "over nothing but the choice of one routine medical procedure versus another" is insufficient to state an Eighth Amendment claim. *McGowan v. Hulick*, 612 F.3d 636, 641 (7th Cir. 2012) (affirming dismissal of claim that focused on dentist's decision to extract a tooth rather than fill it). Those are the circumstances here. The undisputed facts indicate that an extraction and a root canal are both acceptable forms of treatment for a necrotic tooth. "Although a medical professional's actions may reflect deliberate indifference if he or she chooses an 'easier and less efficacious treatment' without exercising professional judgment," *see id.* (citations omitted), that does not accurately describe Luedtke's actions with regard to Kleser.

Luedtke determined that a root canal was not preferred in light of the unique circumstances of Kleser's tooth. Thus, he offered, and Kleser eventually accepted, the other acceptable treatment, i.e., an extraction. Multiple courts have held that similar circumstances do not violate the Eighth Amendment. *See Matthews v. Raemisch*, 513 Fed.Appx. 605, 607-08 (7th Cir. 2013) (unpublished) (holding that dentist's offer of

extraction in place of root canal did not violate the Eighth Amendment); *James v. Pennsylvania Dept. of Corrections*, 230 Fed.Appx. 195, 196-98 (3rd Cir. 2007) (unpublished) (affirming dismissal of deliberate indifference claim where dentist performed extraction rather than root canal because DOC did not permit a certain type of root canal); *Davis v. Norris*, 198 F.3d 249, 249 (8th Cir. 1999) (unpublished) (affirming dismissal of claim where dentist denied root canal, in part, because an inmate does not have a constitutional right to any particular type of treatment). Dr. Luedtke is entitled to summary judgment.

### III. CONCLUSION

**WHEREFORE, IT IS HEREBY ORDERED** that the defendants' motion for summary judgment (ECF No. 23) is **GRANTED**.

**IT IS FURTHER ORDERED** that the Clerk of Court **DISMISS** this action and enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. *See* Federal Rule of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated at Milwaukee, Wisconsin this 22nd day of July, 2016.

*[signature: William E. Duffin]*
WILLIAM E. DUFFIN
U.S. Magistrate Judge